IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | Crim. No. 04-232-BAH |
| EDUADO SHAWAN COUNTESS, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Eduado Shawan Countess ("Countess")[1] is currently incarcerated at FCI-Talladega and serving a life sentence for the murder of Jesse Williams. Two of Countess's co-defendants accepted plea bargains and were sentenced to significantly shorter terms of imprisonment that have now run their course. Countess and co-defendant Solothal Thomas ("Thomas") went to trial. Both were convicted and sentenced to serve multiple life sentences. In late December of 2024, Thomas successfully petitioned to have his sentence reduced to thirty-five (35) years by Judge Blake. ECF 389.[2] Countess, who is now represented by counsel, seeks compassionate release on similar grounds as Thomas. *See* ECF 349 (pro se motion); ECF 401 (supplemental memorandum filed by

---

[1] The record contains various spellings of Countess's name. Counsel has explained that "Mr. Countess has confirmed that his name is Eduardo Shawn Countess." ECF 401, at 1 n.2. Because no party has asked the Court to amend the case caption, which has contained the incorrect spelling of Countess's name for over two decades, the Court will not amend the spelling in the caption beyond noting the misspelling.

[2] The opinion addressing Thomas's motion for compassionate release can also be found at *United States v. Thomas*, Crim. No. CCB-04-232, 2024 WL 5239411 (D. Md. Dec. 27, 2024). Judge Blake also granted in part and denied in part Thomas's motion to vacate under 28 U.S.C. § 2255. *See* ECF 387; *Thomas v. United States*, Crim. No. CCB-04-232, 2024 WL 5239049 (D. Md. Dec. 27, 2024).

counsel). The motion is fully briefed and ripe for a decision. *See* ECF 406 (Government's response in opposition); ECF 409 (Countess's reply); ECF 412 (update filed by counsel for Countess). No hearing on the motion is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons noted below, the motion will be **GRANTED** and Countess's sentence will be reduced to a total of thirty-five (35) years. His term of supervised release will remain unchanged.

I.     BACKGROUND

The facts of this case are thoroughly summarized in Countess's supplement (ECF 401) and the Government's opposition (ECF 406). The Court assumes familiarity with these filings and will not recount all the details of Countess's case here. In short, in 2004, Countess was indicted on six charges related to a murder for hire conspiracy. ECF 387, at 1. Countess and Thomas were hired to kill Williams by Tyree Stewart, a Baltimore drug dealer who was upset with Williams for Williams's role in allegedly robbing Stewart's mother's home. *Id.* On October 2, 2001, Countess and Thomas shot and killed Williams and later collected payment for their crime. *Id.* at 1–2. They were subsequently arrested and charged federally in May of 2004. ECF 1 (indictment); ECF 11 (superseding indictment).

In 2006, a jury convicted Countess of one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 and § 841(b)(1)(A) (Count One); one count of conspiracy to use interstate commerce facilities in commission of murder-for-hire in violation of 18 U.S.C. § 1958(a) (Count Two); one count of using interstate commerce facilities in commission of a murder-for-hire, also in violation of 18 U.S.C. § 1958(a) (Count Three); one count of conspiracy to possess a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(o) (Count Four); one count of possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Count Five); and one count of possessing a firearm in furtherance of a crime of violence resulting in death in violation of 18 U.S.C. § 924(j) (Count Six). *See* ECF 231 (judgment),

at 1. Countess was sentenced to concurrent terms of life imprisonment on Counts One, Two, Three, and Six, a concurrent term of 240 months' imprisonment on Count Four, and a consecutive sentence of 120 months' imprisonment on Count Five. *See id.*, at 3. Countess was also sentenced to serve concurrent terms of supervised release totaling five (5) years. *Id.* at 4. The convictions and sentence were affirmed by the United States Court of Appeals for the Fourth Circuit on direct appeal. *See* ECF 373; *United States v. Thomas*, 282 F. App'x 244, 246 (4th Cir. 2008) (per curiam). Countess subsequently filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. See ECF 285. That motion was denied in 2021. *See* ECF 293. A subsequent motion to vacate, *see* ECF 320, was also denied, *see* ECF 338. On August 20, 2021, Countess filed a motion seeking compassionate release. ECF 349.

## II.   LEGAL STANDARD

A sentencing court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Stavrakis,* Crim. No. ELH-19-0160, 2025 WL 2897668, at *13 (D. Md. Oct. 9, 2025) (collecting cases).[3] But, "the rule of finality is subject to a few narrow exceptions," *Freeman v. United States*, 564 U.S. 522, 526 (2011), such as when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020).

One exception is 18 U.S.C. § 3582, which is commonly referred to as "compassionate release" and was first enacted as part of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). *See United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (per curiam) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to

---

[3] Much of this section is taken directly from Judge Hollander's opinion in *Stavrakis*. Other sections are borrowed from Judge Blake. Both esteemed jurists are meticulous in summarizing the relevant law and any effort to improve on their exhaustive work would be futile. As such, much of this is lifted word-for-word from their prior work, but with deep respect and admiration.

as a motion for compassionate release"). Specifically, § 3582(c)(1)(A)(i) authorizes a court, in its discretion, to reduce a defendant's sentence if: (1) "extraordinary and compelling reasons warrant such a reduction"; (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the Court has considered the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A).

With the passage of the First Step Act ("FSA") in 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018), codified as 18 U.S.C. § 3582(c)(1)(A), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020). As a result, a federal inmate may now file a motion for compassionate release directly with the Court, as long as the inmate first exhausts administrative remedies. *See McCoy*, 981 F.3d at 283.

Courts use a two-step process in evaluating motions for compassionate release under the § 3582(c)(1)(A) criteria mentioned above. *See United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). The first step consists of two parts, which "are supposed to work together." *United States v. Burleigh*, 145 F.4th 541, 547 (4th Cir. 2025). The Court "must determine: (1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Stavrakis*, 2025 WL 2897668, at *14 (citing *United States v. Malone,* 57 F.4th 167, 173 (4th Cir.

4

2023)). When there was no applicable policy statement relating to compassionate release motions, the Court had discretion to make its "own independent determination of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A)." *Burleigh*, 145 F.4th at 548 (cleaned up); *see also United States v. Johnson*, 143 F.4th 212, 215 (4th Cir. 2025) (explaining that, "[i]n the absence of an applicable policy statement, district courts" have the power to "consider any extraordinary and compelling reason for release" (cleaned up)). However, in 2023, the Sentencing Commission issued guidance about what qualifies as extraordinary and compelling reasons to grant relief to a defendant who moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13. The Fourth Circuit has held that "district courts deciding motions for compassionate release after November 1, 2023, should apply § 1B1.13 when rendering their decisions." *United States v. Crawley*, 140 F.4th 165, 170 (4th Cir. 2025). Relevant here, Countess asserts—as Thomas did before him—that a finding of "extraordinary and compelling" circumstances is supported by the "'broad catchall provision' found in U.S.S.G. § 1B1.13(b)(5)[.]" ECF 409, at 2.[4]

---

[4] That Guideline provision holds that "extraordinary and compelling reasons exist" when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves . . . are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Paragraphs (1) through (4) of that Guideline include medical circumstances, age, family circumstances, and whether the defendant was victim of abuse while incarcerated. *Id.* at (b)(1)–(4). Countess also notes that if the Court agreed with his argument that his life sentence was, "in fact exceptionally long" compared to other sentences imposed for drug-related murders, such a finding "is consistent with the spirit of [U.S.S.G.] § 1B1.13(b)(6)." ECF 409, at 3. Section 1B1.13(b)(6) is entitled "unusually long sentence" and notes that

> [i]f a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion

5

If both parts of step one are satisfied, the Court then proceeds to the second step and determines whether release is appropriate in light of the sentencing factors listed in 18 U.S.C. § 3553(a) "to the extent those factors are applicable." *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022).

## III. ANALYSIS

### A. Administrative Exhaustion

As noted, "[t]he threshold requirement in § 3582(c)(1)(A) is non-jurisdictional and satisfied if a defendant requests the Bureau of Prisons to bring a motion on their behalf and *either* fully exhausts all administrative rights to appeal the Bureau's decision *or* waits 30 days from the date of their initial request to file a motion in the district court." *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021). Countess submitted a request to the Warden of FCI Talladega on July 8, 2021. ECF 349-1, at 1–6. He never heard back and far more than 30 days has now elapsed. Therefore, Countess has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A); *see also* ECF 406, at 10 (conceding that Countess satisfies the administrative exhaustion requirements for filing a petition seeking compassionate release).

---

is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6). Given that Countess identifies no "change in the law" applicable to his case, this provision would not provide a literal "extraordinary and compelling reason" under the Guidelines. However, the Court acknowledges Countess's point that a reduction to reflect the length of his original sentence compared to other sentences for similar conduct would be in keeping with the "spirit" of § 1B1.13(b)(6). Countess also notes that his petition rests on U.S.S.G. § 1B1.13 (d), which recognizes that "rehabilitation of the defendant while serving [his] sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."

B.    **Extraordinary and Compelling Circumstances**

Countess raises several grounds in support of his claim that he has established extraordinary and compelling circumstances for compassionate release including "the disparity between [his] sentence and the sentence imposed on his co-conspirators," ECF 401, at 10, "the disparity between [his] sentence and the sentence he would likely receive if he were sentenced today," *id.* at 15; and his "relative youthful age at the time of his criminal acts," *id.* at 18. The Court will address each in turn.

1. Sentencing Disparity Between Countess's Sentences and Those of His Co-Defendants

As Judge Blake observed in granting Thomas a sentencing reduction, "[a] sentencing disparity may, in some circumstances, constitute an extraordinary and compelling reason to grant compassionate release." ECF 389, at 2 (citing *United States v. Payton*, Crim. No. PJM-06-341, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021)). The disparity between the sentences of those convicted in this case was well documented in the opinion granting Thomas a reduction in his sentence. ECF 389, at 4–5. Thomas and Countess both received mandatory life sentences. Thomas's bother, Danta Thomas, and fellow co-defendant Linwood Smith also played a role in the murder of Williams. Danta Thomas drove his brother and Countess to Williams's home where Thomas and Countess shot and killed Williams. *Id.* at 4. Danta Thomas received a sentence of 77 months of imprisonment. *Id.* Linwood Smith, who "was supposed to drive Mr. Thomas and Countess to Williams's home that morning, but [] overslept," was sentenced to 64 months in federal prison. *Id.* Of course, neither Linwood Smith nor Danta Thomas pulled the trigger to kill Williams directly, but both played a role in his death. Both also pleaded guilty, and Danta Smith testified for the prosecution at Countess and Thomas's trial. *See* ECF 298, at 2; *Thomas v. United States*, Civ. No. CCB-09-2461, 2013 WL 331337, at *1 (D. Md. Jan. 28, 2013). Given their minor

7

roles in the conspiracy relative to those of Thomas and Countess, and noting their prompt acceptance of responsibility and guilty pleas, both Linwood Smith and Danta Thomas received significantly lower sentences than others involved in the conspiracy. ECF 389, at 4 (citing *United States v. Morales-Vega*, Crim. No. PJM-08-0051, 2021 WL 4864450, at *5 (D. Md. Oct. 19, 2021)). Though some disparity is justified, the significant difference between a life sentence and the sentences these co-conspirators received is notable.

Also of note are the relatively low sentences that Corey Smith and Tyree Stewart received for their significant roles in the offense. Stewart, who "issued the contract" for Williams's murder, received a sentence of 83 months. *Id.* Smith, "who brokered the contract and hired Mr. Thomas and Mr. Countess for $10,000," was sentenced to 97 months. *Id.* Both pleaded guilty and both testified for the Government at trial. *See* ECF 298, at 1; *Thomas*, 2013 WL 331337, at *1. As with the other co-defendants, some disparity is justified given that these co-defendants testified and spared the Government the expense of their own trial, but the sentences these co-conspirators received "were dramatically shorter" than those imposed on Thomas and Countess. ECF 389, at 4.

The Court also cannot ignore the reduction in sentence that Thomas received just over a year ago. As the Government notes in its response, Thomas and Countess were equally culpable in Williams's murder. ECF 406, at 3. And following the murder, "Countess, Thomas, and Danta Smith met up with Stewart and Corey Smith, and collected the agreed-upon $10,000 payment from Stewart for the murder." *Id.* That two men who committed essentially the same crime are serving sentences of different lengths is not, in and of itself, grounds for a reduction in sentence as the practice of sentencing requires an "*individualized* assessment" that is "tailored to the particular case at hand." *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009) (emphasis added).

However, the record reflects that both Countess and Thomas were similarly situated in almost all key respects and the current disparity in their sentences thus provides an extraordinary and compelling reason weighing in favor of a reduction of Countess's life sentence.

### 2. The Difference in Countess's Sentence and Sentences Imposed in Other Cases for Similar Conduct

As Judge Blake observed, "modern sentencing courts in this District 'routinely impose sentences within the thirty-year range' for youthful defendants 'involved in drug-related killings.'" *United States v. Ferebe*, Crim. No. CCB-96-0401, 2023 WL 6809707, at *3 (D. Md. Oct. 16, 2023) (citing *United States v. Williams*, Crim. No. CCB-07-0402, 2021 WL 3725435, at *3 (D. Md. Aug. 23, 2021)). The median sentence for murder in this District is 300 months, and the national average is even lower. *Id.*; *see also* ECF 401, at 17. Thus, a sentence of thirty-five years would still "remain consistent with this precedent even [though Countess] continues to face a Guideline sentence of life imprisonment today." *Ferebe*, 2023 WL 6809707, at *3. As such, a "mandatory life sentence, however imposed, constitutes a significant sentencing disparity when considering how the modern criminal justice process" operates on defendants like Countess. *See* Mem. and Order at 8, *United States v. Linton*, Crim. No. JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471.[5]

---

[5] Though three of Countess's counts of conviction carried mandatory life sentences, "nothing in § 3582 prevents its application to mandatory life sentences." ECF 389, at 2 ("[W]hile the Government centrally contends that no reduction is appropriate in light of the still applicable mandatory life sentence . . . Congress did not exempt mandatory life sentences from (a) relief under the original language in § 3582(c)(1)(A)(i) or (b) the modifications to the exhaustion requirements of § 3582(c)(1)(A)." (quoting *United States v. Johnson*, Case No. 1:97-cr-314-AJT, 2023 WL 5049267, at *15 (E.D. Va. Aug. 8, 2023))); *see also United States v. Perez*, No. 3:02CR7 (JBA), 2021 WL 837425, at *5 (D. Conn. Mar. 4, 2021) (collecting cases and noting that "[a]lthough his life sentences are mandatory, the mandatory component does not bar relief under the First Step Act").

9

3. <u>Countess's Age at the Time of the Offense, His Difficult Upbringing, and His Rehabilitation</u>

Like Thomas, Countess was twenty-five years old at the time he murdered Williams, *see* ECF 401, at 19, and Judge Blake's observations about Thomas's age apply with equal force to Countess. "[M]odern research . . . instructs that the prefrontal cortex, the part of the brain that makes it possible to exercise good judgment when presented with difficult life situations, does not finish maturing until age 25." ECF 389, at 5 (citing *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 476 (4th Cir. 2021), as amended (July 15, 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021) (Wynn, J., dissenting)). As was the case with Thomas, the difficult upbringing Countess endured and his relatively young age at the time of Williams's murder also support a finding of extraordinary and compelling reasons supporting a reduced sentence. *Id.*

Countess has also taken significant steps to rehabilitate himself while in custody. Though rehabilitation, standing alone, does not constitute an extraordinary and compelling circumstance, it "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). Countess received the highest average score on the GED test at USP Canaan. ECF 349-3, at 9. He has become a solid Unicor contributor and certified operator of heavy machinery. *Id.* at 6. He completed other courses while in custody, *see, e.g.*, *id.* at 4 (CDL), at 5 (weight loss), and has maintained a relatively clean disciplinary record, *see* ECF 406-2, at 1–2 (noting only minor infractions in nearly 20 years of incarceration, with no infractions since late 2021). While incarcerated, Countess suffered through the loss of his grandmother, ECF 349-4, at 3, as well as the sudden loss of his son, *see* ECF 401-1, at 2.

Countess's upbringing was extraordinarily difficult. As his sister recounts in an email, Countess was raised by a mother who was addicted to heroin. *Id.* His father was also addicted to heroin. *Id.* Though his father was often in jail, Countess's sister notes that when he was at home, the home was marked by "physical, emotional, mental, and sexual abuse." *Id.* Countess was frequently beaten as a young man. *Id.* He and his siblings would go without basic necessities, and Countess "would take the risk of sneaking out to get food for [the children left at home] when he knew the adults weren't home." *Id.* Countess's childhood homes were filled with drug abuse and violence, as were the communities surrounding them. *Id.* That Countess continues to make strides in his rehabilitation journey despite his challenging upbringing is, as it was in Thomas's case, "noteworthy." ECF 389, at 7 (citing *Johnson*, 2023 WL 5049267, at *6). Plus, despite apparently defiant and obstreperous conduct during trial, *see* ECF 401, at 3 n.6, Countess now shows remorse for his criminal behavior. ECF 349-4, at 2. He notes that "there is not a single day that goes by that [he does] not regret [his] actions." *Id.* In sum, Countess has established "extraordinary and compelling circumstances" pursuant to U.S.S.G. § 1B1.13(b)(5).

**C.     Application of the Factors Under 18 U.S.C. § 3553(a)**

As noted, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable" before reducing a defendant's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A). These factors include (1) "the nature and circumstances of the offense"; (2) "the history and characteristics of the defendant"; (3) the need for a sentence to "provide just punishment," "promote respect for the law," "reflect the seriousness of the offense," deter crime, protect the public, and provide rehabilitative services; (4) the Guideline sentence; and (5) "the need to avoid unwarranted sentencing disparities among" similarly situated defendants. 18 U.S.C. § 3553(a).

11

Countess's gravest offense of murder-for-hire is among the most serious offenses a defendant can commit. It merits a stiff sentence. At the same time, in consideration of the § 3553(a) factors, the record reflects that Countess's upbring was extraordinarily difficult and he was exposed to drug abuse, violence, and physical and emotional abuse as a child. He was thrust into a life of lawlessness at a young age and committed the offenses at the heart of this case when he was just twenty-five years old. With the benefit of time and after spending a significant portion of his life behind bars, he appears to recognize the harm he has caused and has learned the valuable lesson that "respect for others in paramount." ECF 349-4, at 3. He is now fifty years old and has obviously grown tremendously as a person while in custody. Simply put, given his extensive family support and demonstrable personal growth in prison, the Court agrees with his sister that Countess has proven "to be a better man than he was" twenty-five years ago when he murdered Williams. ECF 401-1, at 2. Thus, it is clear to the Court that a life sentence is not needed to protect the public from further crimes committed by Countess.

A reduced sentence of a length equal to Thomas's will promote respect for the law and provides for just punishment. Thirty-five years remains a staggering sentence, and one that serves as a powerful deterrent. Moreover, it means that Countess still has a long time to go before he will re-enter society. When he does, he will have reaped the benefit of additional programming in custody and will be at an age where "recidivism becomes dramatically less likely, and the risk of endangering the public correspondingly less acute." *United States v. Taylor*, Crim. No. CCB-02-0410-3, 2023 WL 4407593, at *6 (D. Md. July 7, 2023).

Finally, given Thomas's reduced sentence and the drastically lower sentences for his other co-defendants, a reduction in Countess's sentence addresses the need to avoid unwarranted sentencing disparities among similarly situated defendants.[6]

## IV.   **CONCLUSION**

For the reasons noted above, Countess's sentence will be reduced to a total of thirty-five (35) years. Specifically, his sentences on Counts One, Two, Three, and Six are reduced to three hundred (300) months, to run concurrent to a sentence of two-hundred-and-forty (240) months on Count Four. The Court will impose a sentence of one-hundred-and-twenty (120) months on Count Five to be served consecutively to the sentences for all other counts. The result is a total sentence of four-hundred-and-twenty (420) months. The Court will also re-impose the same terms of supervised release: five (5) years as to Counts One, Two, Three, Five, and Six, and three (3) years

---

[6] The Court notes that while it will reduce Countess's sentence to match Thomas's, it must take a slightly different path to achieve that result. As noted, prior to granting Thomas's request for compassionate release and reducing his sentence, Judge Blake also granted in part Thomas's motion to vacate under 28 U.S.C. § 2255. *See* ECF 387; *Thomas v. United States*, Crim. No. CCB-04-232, 2024 WL 5239049 (D. Md. Dec. 27, 2024). With the agreement of the Government, this ruling vacated three of Thomas's counts of conviction because they could "no longer stand" after *United States v. Davis*, 588 U.S. 445 (2019), and *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (en banc). ECF 387, at 4. Thus, Judge Blake vacated Thomas's convictions for conspiring to possess firearms and actually possessing firearms in furtherance of a drug-trafficking crime and crime of violence (Counts Four and Five) and his conviction for causing the death of a person using a firearm in the course of committing a drug trafficking crime and a crime of violence (Count Six). *Id.* at 11–12. At a status conference on January 29, 2026, the parties in the case at bar agreed that Countess's counts of conviction are not impacted by *Davis* and *Simms*, and thus similar § 2255 relief is not warranted in Countess's case. ECF 420. Given that Count Five carries a mandatory consecutive sentence of 10 years, the Court cannot simply reduce the remaining counts of conviction to 35 years as the result would be a sentence of 45 years. To ensure equal treatment to Countess, the Court will reduce the sentences on Counts One, Two, Three, and Six to 300 months, to run concurrent to a sentence of 240 months on Count Four. The Court will impose a sentence of 120 months as to Count Five to be served consecutive to the sentences for Counts One, Two, Three, Four, and Six. The result is a total sentence of 420 months, or 35 years, the same length of Thomas's revised sentence. ECF 391, at 2.

as to Count Four, to be served concurrent to one another for a total term of supervised release of five (5) years.

    A separate implementing order will issue.

Dated: <u>February 20, 2026</u>　　　　　　　　　　　　　<u>　　　　　/s/　　　　　</u>
                                                                                    Brendan A. Hurson
                                                                                   United States District Judge